IN THE OREGON TAX COURT
MAGISTRATE DIVISION
Property Tax

PETER METZGER,                              )
                                            )
            Plaintiff,                       )     TC-MD 120534D
                                            )
      v.                                     )
                                            )
CLATSOP COUNTY ASSESSOR,                     )
                                            )
            Defendant.                       )     **DECISION**

      Plaintiff appeals the 2011-12 real market value of property identified as Account 25547

(subject property).  Steven Anderson (Anderson), owner and broker of First Class Properties,

appeared and testified on behalf of Plaintiff.  Michael Grant (Grant), Oregon registered appraiser

and Defendant's Appraisal Supervisor, appeared and testified on behalf of Defendant.

      Plaintiff's Exhibits Items A through F, Defendants' Exhibits A through D, Plaintiff's

Rebuttal Exhibit B and Defendant's Rebuttal Exhibits E through H were admitted without

objection.

## I.  STATEMENT OF FACTS

      Anderson testified that the listing information provided by Rowena Price, Coldwell

Banker Kent Price Realty, accurately describes the subject property.  (Ptf's Ex Item A.)

According to the listing, the subject property is a single family residence with a split level

daylight basement located on 0.17 acres in Astoria, Oregon.  (*Id*.)  The subject property, built in

1973, has approximately 2,162 square feet of gross living space, four bedrooms and two

bathrooms with a two stall carport.  (*Id*.)  Anderson testified that according to the listing the

subject property was listed for sale for 208 days, at a final listing price of $174,900, but did not

sell and during the entire listing period the owner "did not receive any offers."

Anderson testified that in December 2010 the subject property was sold at auction for $84,000. (Ptf's Ex Item C1.) Grant testified that this court has previously concluded that auction sales are not arm's-length transactions, citing *Monserud v. Clatsop County Assessor*, TC-MD No 100577C (June 6, 2011), and *Schnabel v. Clatsop County Assessor*, TC-MD No 100618D (Feb 22, 2011). Anderson testified that "the seller rejected" Plaintiff's "auction offer" and Plaintiff was given an opportunity to "counter." (*Id*. at Item C3.) Anderson testified that Plaintiff made two offers that were rejected. (*Id*. at Items C4-C5.) Anderson testified that on February 14, 2011, Plaintiff's counter offer of $129,150 was accepted. (*Id*. at Item B1.) Anderson testified that an appraisal report was prepared by Steven A. Weed, "a former Clatsop county appraiser," concluding an "Indicated Value by Sales Comparison Approach" of $135,000 as of "01/13/2011[.]" (*Id*. at Item D2.) That report stated that the subject property was "listed for 97 days, starting at $200,000 and reduced to $174,900, listing canceled 10/27/10." (*Id*. at Item D1.)

Anderson testified that this court in *Do v. Multnomah County Assessor*, TC-MD No 100216C (June 15, 2011), concluded that a "bank sale is a reflection of the market." (*Id*. at Item E.) He testified that he identified 22 residential properties with sale prices between $101,000 and $150,000, stating "10 were bank owned properties," "5 estate sales" and "one a short sale." (Ptf's Ex Item F1.) Anderson testified that of the 22 sales "that would leave six" arm's length transactions that "according to the assessor" are "real market value." He testified that in Astoria, the "market was short sales and bank sales." Grant disputed Anderson's conclusion, testifying that in the entire county "foreclosure or distress sales are not significant," representing less than 15 percent of all sales if "related party transactions are eliminated." (Def's Ex A-24.) He acknowledged that "all sales including foreclosures and short sales" in "Neighborhood D,"

where the subject property is located, were "37.50 [percent]" in 2011. (*Id.*) Grant responded that the "37.50 percent " is a "small sample size [without] enough transactions to make a conclusive" finding that the "market is distressed sales." Grant testified that "arm's-length transactions are happening" in the county and "current arm's-length sales have already compensated and adjusted in value for the distressed sales in the same area." (*Id*. at 17.)

Grant testified that his appraisal report relied on the comparable sales approach to determine the subject property's real market value of $217,392. He testified that:

> "[w]e found six arm's length sales and four foreclosure sales to compare value. In all cases, we used the Oregon Department of Revenue (DOR) cost factor books to adjust the differences in the comparable sales against the subject and these adjustments were time trended, depreciated and were market trended. By using the DOR factor books, we mitigated the use of opinion over factual studies. To adjust for class, class adjustments and age, we used the current depreciation schedules and system tables to make these adjustments, which were created by large studies in compliance with DOR standards.
>
> "All Sales – we compared all sales (the 6 arm's length sales and the 4 foreclosure sales combined). In this comparison the indicated value average was $211,092 and the median value was $200,875.
>
> "* * * Of the 4 foreclosure sales, when adjusted the indicated value average is $203,807 and median is $188,133.
>
> "We believe that the arm's length sales actually reflect the foreclosure issues in the market as they compete with the foreclosures and have sold. These sales indicate the value is $219,000 as of January 1, 2011. Clatsop County would like for the court to reverse Bopta's decision and value the subject property at the original value of $217,392 as supported herein."

(*Id*. at 17, 18.) The Clatsop County Board of Property Tax Appeals ordered a real market value of $174,900. (Ptf's Compl at 3.)

Anderson questioned Grant, asking how the county could conclude that the subject property's real market value as of January 1, 2011, was $217,392 when the subject property was listed for 208 days and had no offers at the final listing price of $174,900. Grant responded, stating that he was not "sure of the number of days" the subject property was listed.

In rebuttal, Anderson offered "4 comparable sales that took place in the same area and the same time frame." He "also made adjustments to those properties for the benefit of this court." (Ptf's Rebuttal Ex B1.) Anderson's adjusted sale prices ranged from $103,000 to $125,400 and sale dates ranged from December 2010 to August 2011. (*Id*. at B11, B12.) The selected properties were built between 1909 to 1962, and their total gross living area ranged from 1,554 square feet to 2,471 square feet. (*Id*.) Anderson testified that the subject property's "blended real market value" was $114,525. Grant offered rebuttal evidence, testifying that two of Anderson's four sales are foreclosure sales, one sale was between related parties and the other sale was an "estate sale." (Def's Rebuttal Exs E through H.) In response to questioning, Grant testified that "estate sales" are not "always arm's length" because the estate may be interested in "liquidating the asset" and "you can't determine if it is a distress sale."

## II. ANALYSIS

The issue before the court is the 2011-12 real market value of Plaintiff's property. "Real market value is the standard used throughout the ad valorem statutes except for special assessments." *Richardson v. Clackamas County Assessor*, TC-MD No 020869D, WL 21263620, at *2 (Mar 26, 2003) (citing *Gangle v. Dept. of Rev*., 13 OTR 343, 345 (1995)). Real market value is defined in ORS 308.205(1),[1] which reads:

> "Real market value of all property, real and personal, means the amount in cash that could reasonably be expected to be paid by an informed buyer to an informed seller, each acting without compulsion in an arm's-length transaction occurring as of the assessment date for the tax year."

There are three approaches to valuation (cost, income, and comparable sales) that must be considered in determining the real market value of a property, even if one of the approaches is found to not be applicable. *Allen v. Dept. of Rev.*, 17 OTR 248, 252 (2003); ORS 308.205(2);

---

[1] All references to the Oregon Revised Statutes (ORS) are to 2009.

OAR 150-308.205-(A)(2)(a). There is no evidence that either party considered the cost approach of income approach. Both parties relied on the comparable sales approach.

"In all proceedings before the judge or a magistrate of the tax court and upon appeal therefrom, a preponderance of the evidence shall suffice to sustain the burden of proof. The burden of proof shall fall upon the party seeking affirmative relief * * *." ORS 305.427 (2005). Plaintiff must establish his claim "by a preponderance of the evidence, or the more convincing or greater weight of evidence." *Schaefer v. Dept. of Rev.*, TC No 4530 (July 12, 2001) (citing *Feves v. Dept. of Rev.*, 4 OTR 302 (1971)). This court has stated that "it is not enough for a taxpayer to criticize a county's position. Taxpayers must provide competent evidence of the RMV [Real Market Value] of their property." *Poddar v. Dept. of Rev.*, 18 OTR 324, 332 (2005) (quoting *Woods v. Dept. of Rev.*, 16 OTR 56, 59 (2002) (citation omitted)). Competent evidence includes appraisal reports and sales adjusted for time, location, size, quality, and other distinguishing differences, and testimony from licensed professionals such as appraisers, real estate agents and licensed brokers.

A.      *Purchase Price*

When determining real market value, a recent, voluntary, arm's-length sale of a property between a willing and knowledgeable buyer and seller is very persuasive of real market value. *Kem v. Dept. of Rev.*, (*Kem*) 267 Or 111, 114, 514 P2d 1335 (1973); *see also Sabin v. Dept. of Rev.*, 270 Or 422, 426-27, 528 P2d 69 (1974); *Equity Land Res. v. Dept. of Rev.*, 268 Or 410, 414-15, 521 P2d 324 (1974). The two important considerations are whether or not the sale was "recent" and whether it was "arm's length." *Kem*, 267 Or at 114-15.

Plaintiff's purchase, which closed on February 14, 2011, was close to the January 1, 2011, assessment date, making it a fairly recent sale. *See Brashnyk v. Lane County Assessor*, (*Brashnyk*) TC-MD No 110308, WL 6182028 at *5 (Dec 12, 2011).

The next question is whether the sale was an "arm's length" transaction. At the time of Plaintiff's purchase, the subject property was a bank-owned property. (Def's Ex B at 5-6.) This court has addressed the issue of bank-owned property previously, observing that:

> "A property purchased through foreclosure may well involve an element of compulsion on the part of the seller. There are many practical reasons why the sale of a property following foreclosure by the lender might involve an atypical market condition rendering the transaction of little or no value as an indication of market value. For example, the lender may have a policy of selling such property only for the amount of the underlying debt, regardless of what the property may actually be worth, particularly if it would take a few months more to find a buyer willing to pay a higher price. If so, the sale, at best, likely represents the low end of the real market value range, and may have been well below the actual market value of the property."

*Kryl v. Lane County Assessor*, (*Kryl*) TC-MD No 100192B, WL 1197444 at *2 (March 30, 2011).

In *Kryl*, this court gave little weight to a bank-owned property sale in which the bank sold the property within a few months after acquiring it and after a short listing period. (*Id*.) This court has also observed that, "a sale of bank-owned property conducted with such rapidity suggests duress or compulsion on the part of the seller, leading the court to conclude such sales as not indicative of an arm's-length transaction." *Brashnyk*, TC-MD No 110308.

The Department of Revenue's administrative rules specify that "[w]hen nontypical market conditions of sale are involved in a transaction (duress, death, foreclosures, interrelated corporations or persons, etc.) the transaction will not be used in the sales comparison approach unless market-based adjustments can be made for the nontypical market condition." OAR 150-308.205-(A)(2)(c).

The Oregon Supreme Court has recognized that property purchased through foreclosure may be considered "a voluntary *bona fide* arm's-length transaction between a knowledgeable and willing buyer and a willing seller." *Ward v. Dept. of Revenue*, 293 Or 506, 508, 650 P2d 923 (1982). This court has also held that "[t]here are narrow exceptions determined on a case-by-

case basis to the holding that bank-owned property sales are not typically representative of real market value." *Brashnyk*, TC-MD No 110308. "[W]here the majority of sales are distress, it would seem that that kind of sale would provide a more accurate reflection of the market." *Morrow Co. Grain Growers v. Dept. of Rev.*, 10 OTR 146, 148 (1985). Bank-owned property sales may be considered as comparable sales for the purpose of establishing real market value, "when those bank-owned property sales have been exposed to the open market and meet the 'nominal standards for an acceptable comparable sale.'" *Brashnyk*, TC-MD No 110308 (citation omitted).

The statutory definition of real market value requires that the sale transaction be an arm's-length transaction between a willing buyer and a willing seller, "each acting without compulsion." ORS 308.205(1). Plaintiff purchased the subject property through an auction and negotiated offer and counteroffer with the bank. Plaintiff's purchase does not meet the statutory definition. The subject property was offered for sale at auction. An auction is defined as a "public sale of property to the highest bidder." *Webster's Third New Int'l Dictionary* 142 (unabridged ed 2002). An auction eliminates the negotiation between the buyer and seller and requires buyers to negotiate with each other, generally leaving the seller out of the negotiation process.

Anderson testified that Plaintiff did negotiate with the seller, who rejected Plaintiff's initial auction offer of $84,000. Anderson testified that Plaintiff and the seller ultimately agreed on a price of $129,150, almost 55 percent more than Plaintiff's initial offer. Plaintiff offered no explanation as to how the subject property's purchase price was determined. Anderson offered an appraisal report dated January 13, 2011, stating that the contract price was $129,150 and

/ / /

concluding a real market value as of that date of $135,000, an amount more than Plaintiff's negotiated purchase price. The appraiser who prepared the report did not testify.

The subject property was a bank-owned property that Plaintiff purchased through an auction and then negotiated a final purchase price. Without any other evidence to overcome the implication of duress or compulsion on the part of the seller and a purchase price less than Plaintiff's appraiser's indicated real market value, the court concludes that Plaintiff's purchase of the subject property was not indicative of an arm's-length transaction. Plaintiff's purchase price of $129,150 is not singularly persuasive evidence in establishing the subject property's real market value.

B.      *Comparable sales approach*

"In a case such as this one before the court, the comparables sales approach may be used to value improved properties[.]" *Chambers Management Corp v. Lane County Assessor*, TC-MD No 060354D, WL 1068455 at *3 (April 3, 2007) (citing Appraisal Institute, *The Appraisal of Real Estate* 335 (12th ed 2001)). The legislature requires real market value to be determined in all cases by "methods and procedures in accordance with rules adopted by the Department of Revenue * * *." ORS 308.205(2). The Department of Revenue adopted OAR 150-308.205-(A)(2)(c), stating, in relevant part, that "[i]n utilizing the sales comparison approach[,] only actual market transactions of property comparable to the subject, or adjusted to be comparable, will be used. All transactions utilized in the sales comparison approach must be verified to ensure they reflect arms-length market transactions."

Anderson, a real estate broker, offered properties he identified as comparable to the subject property and made adjustments to the sale prices for each of the four properties. Anderson failed to verify each sale. Anderson erroneously reported that one of the sales was

"neither a short sale or bank sale" (in fact, it was a bank owned property) and failed to disclose that one of the sales was between related parties (the sale was between a grandparent and grandson). Anderson provided no documentation to support the dollar amount of the adjustments for time, lot size, exterior aluminum siding, gross square footage and age. Anderson submitted an appraisal report, but the individual who prepared the report did not testify. That report supports a real market value greater than Plaintiff's purchase price. Anderson selected one comparable property that was the same as a property selected by Plaintiff's appraiser.[2] (Ptf's Ex Item D2; Ptf's Rebuttal Ex B11.) Anderson's indicated real market value after adjustments was $103,000; the appraiser's indicated real market value was $124,700. (*Id*.) Anderson offered no reconciliation between his real market value and the appraiser's real market.

Plaintiff's evidence in support of his requested real market value reduction is incomplete and inconclusive. When the "evidence is inconclusive or unpersuasive, the taxpayer will have failed to meet his burden of proof * * *." *Reed v. Dept. of Rev.*, 310 Or 260, 265, 798 P2d 235 (1990). Plaintiff failed to carry his burden of proof.

Even though the burden has not shifted, the court has jurisdiction to determine the "real market value or correct valuation on the basis of the evidence before the court, without regard to the values pleaded by the parties." ORS 305.412. Defendant's appraisal report concluded that the subject property's real market value was more than the "indicated average value or median value" for all sales or the four foreclosure sales. (Def's Ex A at 18.) The subject property was never listed for sale at the real market value determined by Defendant. The subject property was listed for sale at $200,000 and subsequently reduced to $174,900. The subject property did not sell for either of those

/ / /

---

[2] Plaintiff's appraiser lists the comparable property's address as 1701 James Street, whereas Anderson lists it as 1710 James Street. The court concludes this is a typographical error, as the listed sale dates, sale prices, and lot sizes are identical.

listing prices. The Clatsop County Board of Property Tax Appeals determined a real market value based on the subject property's final listing price, a price set close to the assessment date.

### III. CONCLUSION

The evidence presented by the parties is conflicting, incomplete and inconclusive. Plaintiff failed to carry his burden of proof. Given the evidence, the court concludes that the subject property's real market value is no more than $174,900 as of the assessment date. The court accepts the Clatsop County Board of Property Tax Appeals determination as reasonable. Now, therefore,

IT IS THE DECISION OF THIS COURT that Plaintiff's appeal is denied.

IT IS FURTHER DECIDED that the Clatsop County Board of Property Tax Appeals Order, dated April 6, 2012, determining the real market value of $174,900 for property identified as Account 25547 is correct.

Dated this ____ day of October 2012.

_____

JILL A. TANNER
PRESIDING MAGISTRATE

*If you want to appeal this Decision, file a Complaint in the Regular Division of the Oregon Tax Court, by mailing to: 1163 State Street, Salem, OR 97301-2563; or by hand delivery to: Fourth Floor, 1241 State Street, Salem, OR.*

*Your Complaint must be submitted within 60 days after the date of the Decision or this Decision becomes final and cannot be changed.*

*This document was signed by Presiding Magistrate Jill A. Tanner on October 30, 2012. The Court filed and entered this document on October 30, 2012.*